## Fraley et al. v. Commonwealth.

February 8, 1949

B. M. James, W. R. McCoy, and Jasper H. Preece for appellants.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Sam Fraley, Tom Fraley and Jerry Fraley were convicted of the offense of shooting and wounding Foch Blackburn and James E. Blackburn and sentenced to two years in prison. In urging reversal of the judgment the appellants insist that there was a misjoinder of offenses in the indictment and the trial court should have

instructed the jury to find them not guilty at the close of all the evidence.

The trial attorney for the appellants did not file a demurrer to the indictment, but it is insisted that the appellants had a constitutional right to be tried on one charge at a time, namely, the shooting and wounding of either Foch or James Blackburn. With this view we are not in accord. Section 126 of the Criminal Code of Practice provides that an indictment shall charge but one offense. Section 165 expressly provides that a demurrer is proper if more than one offense be charged in the indictment except as provided in section 127. Section 168 provides: "Misjoinder of offenses; dismissal of one. If the indictment improperly charge more than one offense, the attorney for the Commonwealth may d'smiss one of them, and thereupon the demurrer shall not be sustained on that ground." Since no demurrer was filed to the indictment, the question of misjoinder of parties was waived.

We think the second contention of the appellants is well grounded. They were convicted on circumstantial evidence. The evidence for the Commonwealth was sufficient to establish a motive, but we think it failed to raise more than a suspicion as to the guilt of the appellants. The shooting occurred between 6:00 and 6:30 in the evening of September 17, 1947, as the Blackburns were going along Wolf Creek on their way home from D. Nunnery's store, located at the mouth of the Creek. Both of the Blackburns were struck by quite a number of shots fired from one or more shotguns, but neither of them said that they saw who shot them. Foch Blackburn said that two weeks before the day of the shooting he encountered the three Fraleys and Morgan McCoy at the top of a hill as he was on his way home from the Nunnery store; that Tom Fraley told him to halt and accused him of swearing a lot of lies against him; that he started backing off down the road and Sam and the others started running after him; that Tom was jerking at his hip pocket and said he would shoot h'm if he d'd not stop; and that he ran on out into some bushes and spent the night. The trial judge instructed the jury that it should consider this evidence solely for the purpose of showing malice if it did so do on the part of the ap-

pellants toward Foch. Foch Blackburn said also that on the day of the shooting he encountered Sam Fraley at Nunnery's store and when he said something to him about his being waylaid Sam told him not to get before other people and talk about him but that he would settle it somewhere else and then left. James Blackburn was also at the store and said he overheard the conversation between his brother and Sam. Mr. Nunnery said Sam Fraley and the Blackburns were at his store on the afternoon of the shooting; that Foch Blackburn and Sam had some words; and that Sam left around 5 o'clock and the Blackburns left a little later. Both of the Blackburns said that, as they were walking along Wolf Creek about a mile below Tom Fraley's house leading a horse, across the back of which was thrown a sack of groceries, they were fired upon. Lacy Morrison said he went by the mouth of Cow Fork late in the afternoon of the day of the shooting and that he saw Bishop Morrison and his son, Jack, but that he did not see any of the Fraleys there. Another witness said she heard Jerry Fraley say something about Foch Blackburn. The sheriff said he found all of the Fraleys at Tom's home early the morning after the shooting. He said that later he found a sack with a few cans of food in it at the point where the shooting was said to have occurred. Jack Morrison and Tom and Jerry Fraley said they saw some hogs eating out of a sack, apparently left by the Blackburns, at the scene of the shooting. There was testimony also that some weeds and bushes had been tramped down, apparently by more than one person, at a place in the bushes some thirty yards from where the Blackburns were shot. An attempt was made to show that shoeprints seen by the Blackburns along the creek were similar to those made by shoes worn by Sam Fraley; however, all of the Fraleys denied they were wearing shoes with cleats on them. A deputy sheriff said two shotguns found at Tom Fraley's home looked as if they had been fired recently. On cross examination he said that Tom Fraley asked him to examine one of the guns to see whether or not there was dust on it, saying that it had not been out of the room for two weeks, and he answered, "Yes." However, no tests were made of the guns to determine how recently they had been fired, nor were any paraffin tests made of the hands of any of the Fraleys to deter-

mine whether any of them had recently fired a gun. Shells loaded with shot ranging from No. 2 to No. 8 were found at Tom Fraley's home.

The Fraleys admitted seeing Foch Blackburn on the day he said he was waylaid, but said that as he came within about 75 yards of the place where they were sitting on the bank of the road he reached his hand toward his hip pocket and then turned and went in the direction from whence he had come. They denied following him. Sam Fraley said he started with Jerry and Tom to look for bee trees about the middle of the morning, then returned to Tom's home to turn out some calves and then went on to the store to get some cigarettes and tobacco. He said he did not see Jerry and Tom any more until about 7:30 when they returned to Tom's home. He said also that he saw the Blackburns at Mr. Nunnery's store; that he had had some words with Foch; that he left the store around 5 o'clock and returned to Tom's home and upon finding the house locked waited on the porch until Tom's wife arrived; and that Tom's wife unlocked the house and gave him some supper. Tom and Jerry said at no time during the day did they have any guns with them; that after looking for bee trees for a while they came down toward the mouth of Cow Fork and ran into Bishop and Jack Morrison; that upon being told that some hogs were out on the Creek they and Bishop Morrison went up Cow Fork to fix some fence; that Jack left on his mule to go to Nunnery's store to get some tobacco for his father; that when they came back to the mouth of Cow Fork they saw Jack Morrison and he told them about seeing the Blackburns' sack of groceries on the road with some hogs around it; that as they went home they saw the sack of groceries and hogs; and that they did not see the Blackburns that day The testimony of Bishop and Jack Morrison supported that of Tom and Jerry relative to their whereabouts during the afternoon.

As said at the outset, we think the evidence was sufficient to establish a motive for the shooting; however, no one testified that they saw any of the Fraleys at or near the scene of the shooting. We have noted the testimony for the appellants as to their whereabouts at the time of its occurrence. The evidence for the Common-

wealth raises a suspicion as to the guilt of the appellants, but under the instructions the jury was required to believe beyond a reasonable doubt that they were guilty. As said in the recent cases of Jackson v. Commonwealth, 302 Ky. 227, 194 S.W.2d, 384, and Rush v. Commonwealth, 308 Ky. 302, 214 S.W.2d 384, while a conviction may be had on circumstantial evidence, such evidence must be stronger than a suspicion and it will be deemed insufficient to sustain a conviction if it is as consistent with the innocence of the accused as with his guilt.

Wherefore, the judgment is reversed, with directions to set it aside, and for the giving of a peremptory instruction in favor of the appellants, if the evidence be the same on another trial.